## NICK SALISTEAN V. STATE OF NEBRASKA.

### FILED JULY 20, 1927. No. 25550.

1. **Criminal Law:** DISCHARGE OF JURY: JEOPARDY. The order of the trial court discharging the jury without prejudice to the prosecution, as set out in the opinion, *held* to state sufficient reasons under section 10151, Comp. St. 1922, to warrant the discharge of the jury, and the defendant is not thereby acquitted.

2. ———: ———: PRESUMPTION. "All presumptions exist in favor of the regularity of the judgments of courts of general jurisdiction, and he who asserts the contrary is required to establish the alleged error by an exhibition of the record." *Wright v. State*, 45 Neb. 44. Where it is claimed that error was committed by discharging the jury in a criminal case without first judicially determining from evidence adduced the necessity therefor, we must presume, in the absence of a bill of exceptions showing otherwise, that the proceedings leading up to the making of the order discharging the jury were regular, and that such evidence as was necessary to establish the necessity therefor was before the court at the time the order was made.

3. ———: INSTRUCTIONS: LIMITATION OF EVIDENCE. Where evidence in a case is not admissible for the general purpose of the suit, but only for a particular purpose. the court may, by an instruction, limit such evidence to the particular purpose for which it was admissible. *Held*, that the giving of an instruction by the court, wherein evidence admissible only for a particular purpose was limited to the particular purpose for which it was admissible, was proper.

4. ———: SECONDARY EVIDENCE. Secondary evidence of a fact in issue received without objection is thereby, in law, evidence tending to prove such fact and may be considered as such.

5. **Arson:** INSURANCE: SUFFICIENCY OF EVIDENCE. In a prosecution under section 9592, Comp. St. 1922. it is not necessary to prove that the insurer was a corporation. the statute not making same an element of the crime. It is sufficient if the evidence establishes its *de facto* existence. Evidence examined. and *held* sufficient to establish that the insurance companies named as insurers in the information had a *de facto* existence at the time charged therein.

6. **Evidence** examined, and *held* sufficient to sustain the verdict of the jury.

Salistean v. State.

ERROR to the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed.*

*J. E. Bednar,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before GOOD, THOMPSON and EBERLY, JJ., ELDRED and L. S. HASTINGS, District Judges.

L. S. HASTINGS, District Judge.

The plaintiff in error, hereinafter designated as the defendant, was tried on an information filed by the county attorney of Douglas county in the district court for that county, charging him with a violation of section 9592, Comp. St. 1922.

The information contained five counts charging the defendant with setting fire to a building and certain fixtures and furniture therein, owned by the defendant, which were insured against loss or damage by fire, with intent to burn and destroy the same, and with the intent to prejudice the insurers.

Counts 1 and 2 referred to the buildings covered by insurance in two different companies, counts 3, 4, and 5 referred to fixtures and furniture covered by insurance in three separate companies. To said information the defendant entered a plea of not guilty. On a trial defendant was found guilty on all five counts and sentenced to five years imprisonment on each count, sentences to run concurrently.

For a reversal of the judgment of conviction, defendant relies upon three assignments of error, which will be considered in the order presented in his brief.

It is the contention of counsel for defendant, under the first assignment of error, that defendant has twice been put in jeopardy for the same alleged offense.

At the beginning of the trial, after a jury had been impaneled and sworn and a witness for the state sworn, but before any evidence had been taken, the defendant, without withdrawing his plea of not guilty, objected, orally, to

the introduction of any testimony, and moved for a dismissal and discharge on the ground that on a former occasion he had been put on trial for the same offense charged in the information.

It appears from the transcript that the defendant was placed upon trial on December 7, 1925, a jury impaneled and sworn, evidence adduced, and trial continued to December 8, 1925, at which time the trial proceeded, and was postponed to 2 o'clock p. m. of said day, because the wife of one of the jurors was being confined at the Nicholas Senn Hospital. Thereafter at 2 o'clock p. m. of said day the court entered the following order declaring a mistrial, to wit:

"Thereafter, at 2 o'clock p. m., it appearing that said juror's wife gave birth to a baby daughter at 10 o'clock a. m., that said child has since died, and Mrs. Sanders is seriously ill, and said juror incapacitated mentally to continue to sit as a juror in this case, it is therefore ordered, under authority of law, and particularly under authority of section 10151, Comp. St. 1922, defendant and his counsel being present in court, and making no objection thereto, that the trial of this case so far proceeding be, and is hereby declared to be a mistrial, and the present jury is discharged, and the case left for trial at a later date before a jury selected from a subsequent panel.

"It is further ordered that the above reasons for discharge of the jury be spread upon the journal of this court, and that the prosecution shall not be prejudiced thereby."

The motion is invalid as a plea in bar and cannot be considered as such, but will be treated as a motion to be discharged, grounded upon the proceedings had at the time the defendant was placed upon trial the first time. *Davis v. State,* 51 Neb. 301.

The argument of counsel that the defendant has twice been placed in jeopardy for the same offense is predicated upon two grounds: (1) That the reasons assigned in the order declaring a mistrial and discharging the jury were insufficient under section 10151, Comp. St. 1922, to warrant

the making of the order.     (2) That the trial court arbitra-
rily discharged the jury without hearing and determining
by judicial methods the necessity therefor.

As to the first ground, the argument is that the reasons
relied upon for warranting a discharge of the jury are not
made a specific ground for discharging the jury in a crim-
inal case by section 10151.   Section 10151, Comp. St. 1922,
provides:

"In case a jury shall be discharged on account of sickness
of a juror, or other accident or calamity requiring their
discharge, or after they have been kept so long together
that there is no probability of agreeing, the court shall,
upon directing the discharge, order that the reasons for
such discharge shall be entered upon the journal; and such
discharge shall be without prejudice to the prosecution."

Construing that section, this court has held:   "That the
insanity of a juror was an 'accident' or 'calamity' authoriz-
ing the discharging of the jury."   *Davis v. State,* 51 Neb.
301.

That the words "accident" or "calamity," as used in the
statute, "include as well a case where a biased juror is dis-
covered during the progress of the trial."   *Quinton v. State,*
112 Neb. 684.

The reasons given in the order for discharging the jury
and declaring a mistrial are clearly within the meaning of
the words "accident" or "calamity" as used in the statute.
The serious illness of the wife of the juror and the death
of his child would, as a matter of common knowledge, have
caused him distress of mind and incapacitated him from
giving the case any consideration.   To have continued with
the trial under such conditions would have been inhuman.
It would have been equivalent to trying the case to eleven
jurors.   Furthermore, the sympathy of the other jurors
would naturally have been with him in his misfortune and
tend to render them anxious to dispose of the case as quick-
ly as possible.   Under such circumstances the jury would
not give the case the careful consideration which the im-

portance of the issue merited. The reasons given in the order were sufficient in law to warrant the trial court declaring a mistrial and discharging the jury.

In support of the second ground, the argument of counsel is that, even though the reasons given in the order are sufficient in law, the trial court could not arbitrarily discharge the jury without judicially determining from evidence adduced the necessity for such discharge. The general rule seems to be that, where the necessity for declaring a mistrial and discharging the jury in a criminal case does not occur in open court in the immediate presence of the judge, the facts showing the existence of such necessity must be heard and determined by judicial methods, and if the jury be discharged without that being done the defendant stands acquitted. 8 R. C. L. 156, sec. 146; *State v. Smith,* 44 Kan. 75; *State v. Reed,* 53 Kan. 767; *State v. Allen,* 59 Kan. 758; *State v. Nelson,* 19 R. I. 467, 33 L. R. A. 559; *State v. Jefferson,* 66 N. Car. 309; *Upchurch v. State,* 36 Tex. Cr. Rep. 624, 44 L. R. A. 694; *People v. Parker,* 145 Mich. 488. Upon the record before us, defendant is not in a position to raise the question that the necessity for the discharge of the jury was not judicially determined from evidence adduced.

The rule is: "All presumptions exist in favor of the regularity of the judgments of courts of general jurisdiction, and he who asserts the contrary is required to establish the alleged error by an exhibition of the record." *Wright v. State,* 45 Neb. 44. Also *Saxon v. Cain,* 19 Neb. 488; *Lovelace v. Boatsman,* 113 Neb. 145.

In absence of a bill of exceptions showing otherwise, we must presume the proceedings leading up to the making of the order were regular, and that such evidence as was necessary to establish the necessity for the discharge of the jury and the making of the order was before the trial court at the time it was made. The record before us fails to show that the defendant has been twice placed in jeopardy.

Under the second assignment of error it is urged that the trial court erred in admitting evidence of a former fire

and in giving instruction No. 12 in relation thereto. The argument is that such evidence was not admissible on any theory and its admission prejudicial to the defendant.

It appears from the record that the defendant, while testifying in his own behalf on his direct examination, testified as to the value of the buildings, household goods, furniture and fixtures covered by insurance in the companies named in the information on or about the date on which he was charged with setting fire to the same. This evidence was offered presumably for the purpose of showing that his property was not over-insured at the time of the fire. On cross-examination he was asked the questions complained of in regard to the damage done by the fire to the same property in February, 1925. These and other questions along the same line elicited the information that he had received $600 for the damage done by that fire, that the building had been damaged to the amount of $1,900 and that it had not been repaired at the time of the fire on June 1, 1925. The defendant having testified as to the value of the insured property as of about June 1, 1925, it was entirely within the range of legitimate cross-examination to interrogate him as to the damage done to the property by the February fire and thereby tend to discredit the valuation he had placed upon the property in his direct examination. No questions were asked on cross-examination that would indicate that the fire of February, 1925, was of incendiary origin, but such cross-examination was directed solely to an attempt to discredit his testimony given on direct examination as to the value he had placed upon the property. The trial judge, with that careful regard for the rights of the defendant shown throughout the trial as evidenced by the record, gave instruction No. 12 limiting the application of such evidence to the particular purpose for which it was admissible, and told the jury that the fact that there may have been a former fire on the premises in question in February, 1925, was not to be considered by them as any evidence whatever of defendant's guilt. The rule is, where evidence in a case is not admissible for the

general purposes of the suit, but only for a particular pur-
pose, the court may, by an instruction, limit such evidence
to the particular purpose for which it was admissible. Ran-
dall, Instructions to Juries, sec. 45, and cases there cited.
There was no error in the admission of the evidence com-
plained of. or the giving of the instruction.

It is claimed the verdict is not sustained by sufficient
evidence. It is contended there is no competent proof the
property was insured or that the policies were valid. The
record does not sustain such contention. Mr. Young, the
adjuster for the companies named in the information as
carrying the insurance testified as to the amount of in-
surance each company carried upon the property of the de-
fendant, the property covered, the date when such policies
were issued, and that the same were in force on June 1, at
the time of the fire, and also to an unsuccessful attempt to
adjust the losses thereunder with the defendant. The de-
fendant, while testifying as a witness in his own behalf, also
testified that he took out most of the policies on May 25,
1925, and that he made claim for the damages sustained
by the fire in the sum of $4,600, and was only offered $278
by Mr. Young. The evidence is amply sufficient to show that
the property was insured as charged in the information
and that such insurance was in force at the time of the fire.

The further argument advanced in this connection is
that the policies were the best evidence of insurance, and
that no proper foundation was laid for the introduction of
secondary evidence, and that secondary evidence without
such foundation was incompetent and should not be con-
sidered as proof of such matters. No objection was made
to such testimony of Mr. Young upon any ground. It is to
be presumed that if timely objection had been made the trial
court would have required either the policies to have been
offered or sufficient foundation laid for the introduction of
secondary evidence. Such evidence having been admitted
without objection, it will be considered as competent proof
that the property was insured and the insurance was in
force at the time of the fire.

"The rule excluding secondary evidence when that which is primary is attainable is not so rigid as to be enforced if no objection is made by the party against whom the inferior evidence is offered. It frequently happens that secondary evidence is admitted, and thus becomes primary when it might have been excluded if proper objection had been taken. If the opponent is lax and permits secondary evidence to be given when he might have insisted upon the primary evidence or none at all, an appellate court will not come to his assistance." 2 Jones, Commentaries on Evidence (2d ed.) sec. 774.

It is contended there is no proof that the various companies, alleged to have carried insurance on the building and contents, were corporations or even *de facto* corporations. The gist of the crime denounced by the statute under which this prosecution is brought is the intent with which the person sets fire to his own insured property; it must be with the intent to burn or destroy the same and with the intent to prejudice the insurer, and whether the insurer is a corporation or otherwise is not an element of the crime, and, not being made so, it is not necessary to charge and prove that the insurer was a corporation. *State v. Steinkraus,.* 244 Mo. 152. In this case the information avers that the different companies named therein were corporations, and it is shown by the evidence that the companies named in the information were engaged in insuring property; their names indicate such to be their business, that they insured the property of the defendant, that he recognized their identity and existence by claiming indemnity under the policies issued by them and in trying to settle with their authorized adjuster. This establishes their *de facto* existence as such insurance companies, which is sufficient. *Bloom v. State,* 95 Neb. 710.

It is further contended that, "stripped of technicalities," the evidence falls short of showing the guilt of the defendant. The evidence shows that the defendant at the time of the fire had his building and the contents insured in the

companies named in the information for about $15,250 and, while the same may not have been over-insured, it was, to say the least, well covered by insurance. The building was a three-story building with basement, with a restaurant in part of the basement, the first floor was used as an office and as living rooms for the defendant and his wife, the second and third stories were used as a hotel and rooming house. The hotel was closed as a hotel and rooming house about the 26th day of May, 1925. After closing his hotel to roomers the defendant continued to operate the restaurant in the basement. On the night of the fire he closed his restaurant between 9 and 10 o'clock, and after closing the restaurant and his hotel he retired. He was the only person, so far as the evidence shows, in the building that night. At about 3 o'clock the morning of June 1, a patrolman near the building and a man and his wife standing upon a crossing about 50 feet away heard an explosion in the basement of the building and saw smoke issuing therefrom. The man went to the door of the hotel, pounded on the door, and finally succeeeded in getting the defendant to the door. At that time he was dressed in his underclothing, and, when told that the hotel was on fire, made no comment. In the meantime the patrolman had turned in the fire alarm and in a few minutes the fire company was there. An immediate investigation disclosed that the fire covered a space about 15 feet square, a mattress leaning up against the stairway leading from the basement to the first floor was on fire and seemed to be in about the center of the fire. A gas meter had apparently been pulled from its connection and was lying upon the floor with gas escaping from the broken connection and with fire burning about the same. Along the side of the stairway opening on the first floor, on a shelf directly under the stairway leading to the second floor, was a large open roasting pan, said to contain about four gallons of kerosene, with paper wrapped around the handles and with stringers running therefrom into the contents of the pan. The place where the pan was found was about two feet above the broken gas connection. While

Salistean v. State.

one of the firemen was carrying the pan and its contents from the place where it was found for the purpose of keeping it as evidence, the pan was kicked loose from one of his hands and one end dropped down and the contents were spilled on the floor. The defendant was about three feet from the pan at the time it was kicked, and the fair inference is that he kicked the pan for the purpose of spilling its contents and destroying same as evidence against him. As soon as the pan had been kicked out of the fireman's hands, the defendant grabbed a mop and wiped up the contents. It appears that the rags in the mop after being so used had the odor of kerosene. Several witnesses for the state testify that they were able to tell the contents of the pan by the odor and that same was kerosene. The defendant testifying in his own behalf admits that the pan belonged to him, that he placed it where it was found, but denies that he put kerosene in it or the paper around it, and says that he does not know whether the pan contained kerosene or not. He admits putting the mattress in the basement where it was found on fire. A chemist called as a witness in behalf of defendant testified that in his opinion, under the circumstances existing at the time of the fire, it would be impossible to distinguish the odor of kerosene from the other odors, and if the pan contained water that the escaping gas would impregnate it so that it would be impossible for a person to tell by the odor that it contained kerosene. As to whether the pan contained kerosene or not was a question for the jury. The evidence, while circumstantial, as it must necessarily be in this class of cases, is nevertheless convincing as to the truth of the charge.

The defendant had a fair and impartial trial, the evidence is sufficient to sustain the verdict, and the judgment of conviction should be affirmed and the same is hereby

AFFIRMED.