THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
FEDERICO RIVERA LEÓN, Defendant and Appellant.

No. 11765.   Argued April 9, 1947.—Decided April 30, 1947.

*Ernesto Ramos Antonini* and *Víctor Gutiérrez Franqui* for appellant.
*Luis Negrón Fernández, Acting Attorney General,* and *Joaquín Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Snyder delivered the opinion of the Court.

The defendant was accused of murder in the first degree. He was tried in the District Court of Caguas by a jury and convicted of voluntary manslaughter. He has appealed from a judgment sentencing him to ten years in the penitentiary.

The appellant contends that the district court erred in overruling his plea of former jeopardy. This plea was based on the fact that at a previous trial of the defendant on the same charge the lower court declared a mistrial and discharged the jury after the government had presented all its testimony and while the defendant was in the midst of presenting his testimony.

At the second trial the defendant did not offer in evidence in support of his plea of former jeopardy the transcript of testimony covering the mistrial incident. The record contains only the order of the lower court declaring a mistrial. According to that order, the defendant moved for a mistrial on the ground that three members of the jury had been outside the judicial district of Caguas over the week-end. The order recites that "the attorneys for the defense requested the suspension of this case, temporarily, while the court proceeds to make an investigation of this matter, and the three district attorneys expressly consented thereto ... "

The order then provides that the court "proceeded to conduct the investigation requested by the defense and to which the district attorneys had consented" and has arrived at the conclusion that three members of the jury left the district of Caguas, accompanied by a marshal,[1] and went for a ride and dinner, and that the other nine members of the jury went to a moving picture house within the district, likewise accompanied by a marshal. However, finding that

---

[1] This was a violation of § 260 of the Code of Criminal Procedure.

nothing improper occurred on these or any other occasions since the trial began, the court stated that "on these facts there is no basis in law to grant the motion for a mistrial".

The court nevertheless "for the benefit of the defendant grants the motion for dissolution of the jury presented by the defense" because in the course of its investigation three jurors testified and "by their manner of testifying the Court became satisfied that these three gentlemen are not in condition to render a fair and impartial verdict. Besides the Court understands that the twelve gentlemen of the jury have become aware from publication in the press that it was counsel for the defense who moved for dissolution of the jury and who requested the investigation and this, without any doubt, in the judgment of this Judge, may be an unfavorable influence to the defendant in their deliberations".

The discharge of a jury on motion of the defendant or with his consent, express or implied, prevents him from pleading former jeopardy at a subsequent trial for the same offense. Miller on Criminal Law, pp. 537, 539; Abbott, Criminal Trial Practice, p. 161 (4th ed.); *People* v. *Plata,* 43 P.R.R. 443, 446; *State* v. *Brunn,* 154 P.(2d) 826 (Wash. 1945); *Holt* v. *State,* 59 N.E.(2) 563 (Ind. 1945); *Mack* v. *Commonwealth,* 15 S.E.(2d) 62 (Va. 1941); *Coppage* v. *State,* 71 P.(2d) 509 (Okla. 1937); *State* v. *Reynolds,* 131 S.W.(2d) 552 (Mo. 1939); *White* v. *State,* 214 P. 202 (Okla. 1923); *Commonwealth* v. *Gray,* 60 S.W.(2d) 133 (Ky. 1933); *State* v. *Slorah,* 106 Atl. 768 (Me. 1919); *State* v. *Woo Dak San,* 290 P. 322 (N.M. 1930); 44 Col.L.Rev. 87, 88, footnotes 9, 11; 159 A.L.R. 750, 759; 38 A.L.R. 706. Cf. *Francis* v. *Resweber,* 329 U.S. 459, 91 L.ed. 359, 361. The defendant does not dispute this proposition. But he contends that his motion was not granted and that he did not consent to the mistrial. He argues that, contrary to his expectations, the court conducted a private investigation and, after finding no basis of fact to support his motion, nevertheless declared a

mistrial for other reasons; that the court therefore in effect declared a mistrial *motu proprio;* and that under the circumstances his silence when the court took this action does not connote consent.

■■ We agree with the defendant that the facts on which a motion for a mistrial is based must ordinarily be determined by judicial methods, and that the defendant has the right to be present and to participate therein. See 125 A.L.R. 694, 699; *Salistean* v. *State,* 215 N.W. 107 (Neb. 1927); c. *People* v. *Saldaña,* 66 P.R.R. 181. But here the order of the lower court does not tell us whether the defendant requested the court to conduct a private or a "judicial" investigation. For all that appears in the order the defendant himself may have suggested that the court interview the jurors privately, in order to avoid the prejudice that might conceivably ensue against the defendant if his counsel questioned the jurors and implied misconduct on their part, and his motion was thereafter overruled. On the other hand, it may be that the defendant requested the court not to suspend the case entirely, but only to stop taking testimony on the issue of guilt or innocence in order to conduct in open court a hearing on his motion, including the taking of testimony in support thereof. But even if we assume that the defendant requested a "judicial" investigation and that the investigation of the lower court was therefore improperly conducted, we cannot conclude that this mistrial was a proper basis for a plea of former jeopardy.

It must be borne in mind that this entire matter was opened up by the defendant, who moved for a mistrial on the ground that three jurors had taken a trip outside the district. Whether we call the subsequent investigation of the district court "judicial" or private, the defendant made no protest when the lower court asserted it was granting *his* motion not only because of information it had elicited from three jurors, but also because publicity given to the

motion of the defendant would be prejudicial to the defendant. Even if we assume that the court was not technically granting the motion of the defendant because its order was based on grounds somewhat different from those advanced by the defendant, the court said it *was* granting *his* motion, and stated clearly that it was doing so because of possible prejudice against him. The silence and acquiescence of the defendant in the face of this statement of the court cannot be reasonably interpreted in any other way than as giving his implied consent to a mistrial.

Silence in other contexts may not imply consent, particularly where the action is not precipitated by conduct of the defendant. But here the defendant by his motion set up a chain reaction which achieved the result he requested in his motion. If consent is not implied under these circumstances, it is difficult to conceive of a situation in which consent may be implied.

The cases cited herein hold that if the trial court discharges the jury because of urgent necessity, the defendant cannot invoke the plea of former jeopardy at a subsequent trial even if this action is taken without his consent. However, we need not determine whether such urgent necessity existed here, in view of our finding that the defendant gave his implied consent to the mistrial.

The defendant assigns as the second error the refusal of the lower court to submit to the jury as an issue of fact the question of whether or not the defendant consented to the discharge of the jury at the first trial. The defendant relies on *People* v. *Pérez*, 47 P.R.R. 724. We held in that case that a plea of former jeopardy (p. 747) "may involve a question of fact which should be submitted to the jury, or simply one of law which may be decided by the court."

There was no dispute here as to the facts. Indeed, if there were such a dispute, we could not pass on it as the record does not contain any evidence which the defendant

offered in support of his plea. The facts herein were accepted without dispute by both parties. The only problem was the legal effect of those uncontroverted facts. And that question of law was within the exclusive competence of the district court.

■■ In his third and last error the defendant complains of a ruling of the lower court on admissibility of evidence. This issue arose when the defendant asked one of his witnesses how long he had known the decedent, and the witness replied: "I have known him since the first day I became a member of the police when I arrived at San Ciriaco and he assaulted me." The district attorney moved that the phrase "he assaulted me" be stricken. The jury was excluded, and the defendant offered to prove by the witness and by a certified copy of the judgment that nine months prior to the killing herein the decedent had been convicted of assault and battery because of an attack on the witness, and that the defendant knew those facts when he killed the decedent. Since this case involved the issue of self-defense, the defendant, citing *People* v. *Cruz*, 65 P.R.R. 160, contends that the lower court erred in striking this portion of the answer of the witness and in not permitting proof by the judgment of conviction of this specific act of violence by the decedent.

The *fiscal* of this Court contends that the doctrine of the *Cruz* case applies only if blood is shed. But when we held in that case that convictions of *"delitos de sangre"* were admissible, we were translating the phrase "crimes of violence" used in the cases of the United States. See cases cited in the *Cruz* opinion; 1 Wigmore on Evidence, § 198, p. 677; 2 Id. § 248, pp. 62–64. Cf. 15 U.S.C.A. § 901(6), as amended by Public Law 15, 80th Congress, approved March 10, 1947. In those cases the text is whether the act committed was a crime of violence without reference to bloodshed. We are therefore of the view that where as here the issue is self-

defense, previous convictions for assault and battery fall within the category of crimes of violence established by the *Cruz* case.

However, we did not hold in the *Cruz* case that convictions of the decedent for crimes of violence are automatically admissible in a murder trial whenever the defendant pleads self-defense, irrespective of their nature, number, or dates. We pointed out, quoting 2 Wigmore, *supra*, § 248, p. 65, that under certain circumstances the admission of such a conviction of the decedent is in the discretion of the trial court. And here the lower court cited, among other authorities, this same Section in excluding the judgment of conviction herein.

The theory of the defendant was the following: Fifteen or twenty days before the killing the defendant, an insular policeman, arrested César Carrillo, the decedent, who was a soldier. On that occasion Carrillo resisted arrest, other policemen had to assist the defendant in conducting Carrillo to the police station, and Carrillo used vile, insulting and threatening language to the defendant. Two days before he was killed, Carrillo came to town on leave, overstayed his leave, dressed in civilian clothes, and said he was waiting to see the defendant, against whom he made threats which were communicated to the defendant. The defendant and Carrillo met in a restaurant. Carrillo assaulted the defendant, he was arrested, and taken to the police station. The decedent was seated in the hearing room when the defendant entered. The decedent, seeing the defendant come into the room, grabbed a blackjack which was lying on a table and attempted to attack the defendant. The defendant, apprehensive of serious bodily harm, thereupon shot Carrillo.

The district court permitted testimony to be introduced in support of this theory of the defendant. This testimony included (1) alleged threats made by Carrillo against the defendant fifteen days before the killing and also the night

before the killing to other policemen who communicated these threats to the defendant, and (2) alleged previous attacks of the defendant by Carrillo.

The defendant was therefore given ample opportunity to develop his theory that the turbulent character of Carrillo, of which the defendant had knowledge, created an apprehension in him of serious bodily harm when Carrillo allegedly attacked him with a blackjack in the hearing room of the police station. If the conviction of Carrillo for assault and battery had been the only evidence offered by the defendant to prove the turbulent character of Carrillo, perhaps its exclusion would be reversible error. But the district court had already admitted a great deal of evidence purporting to show threats, violent conduct and attacks by Carrillo directly specifically against the defendant immediately prior to the killing. The admission in evidence of the judgment of conviction of Carrillo in the municipal court for assault and battery of another policeman for which he was fined $50 nine months before he was killed by the defendant would have therefore added little, if anything, to the abundant proof already offered by the defendant to support his contention that he shot Carrillo because he was apprehensive of serious bodily harm due to his knowledge of the turbulent character of the decedent. Under those circumstances, it was not an abuse of discretion amounting to prejudicial error for the lower court to exclude this testimony.

The judgment of the district court will be affirmed.

