521 P.2d 1161

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**John A. ROSS, Defendant-Appellant.**

**No. 1231.**

Court of Appeals of New Mexico.

March 27, 1974.

Rehearing Denied April 17, 1974.

Joseph D. Beaty, Roswell, Donald Klein, Jr., Santa Fe, for defendant-appellant.

David L. Norvell, Atty. Gen., Andrea R. Buzzard, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of two counts of conspiracy, Ross appeals. Section 40A–28–2, N.M.S. A.1953 (2d Repl.Vol. 6). The issues concern: (1) evidence of conspiracy; (2) number of conspiracies; (3) special versus general statute; and (4) evidence as to purpose of the conspiracy.

*Evidence of conspiracy.*

One count charged conspiracy to commit felony arson, that is, where the value of the thing destroyed exceeds $100.00. Section 40A–17–5, N.M.S.A.1953 (2d Repl.Vol. 6). The second count charged conspiracy to damage insured property. Section 40A–15–2, N.M.S.A.1953 (2d Repl. Vol. 6).

The alleged co-conspirators were Ross and Mike Henry. Ross asserts the evidence is insufficient to establish a conspiracy between the two men. We disagree.

Ross told Police Officer Bingham that Henry wanted his building burned, and indicated the price would be $1,000.00. This was reported to Bingham's superior officer. Detective Polo was assigned to work with Bingham.

Bingham and Polo met with Ross to "close a deal" and work out details. The arson was to be done "for insurance purposes so Henry could collect some money." According to Polo, Ross stated "they [Ross and Henry] decided that the best way to do it would be to make it appear as if the business had been burglarized and also vandalized and that we could set the place on fire prior to our leaving."

At the meeting between Ross and the two police officers, Ross paid Bingham $200.00 as a "binder" on the deal. According to Polo, Ross stated he was going to tell Henry that Bingham and Polo were charging $1500.00; that Ross intended to keep $500.00 for himself. "He said that he figured he should profit from making the arrangements."

Ross was not familiar with all the details. Bingham wanted to meet Henry "to finalize the deal, find out when we were going to get paid." On the same evening the two officers met with Ross, the three of them met with Henry. At this meeting, Henry said he "wanted it to look like an arson and a burglary." As to payment of the balance of the money, Henry "said that it would depend on when the insurance company paid him for the theft and vandalism."

On the night scheduled for the arson, the two officers met with Henry. Ross was not present. Henry stated there was a change in plans. According to Henry, his "partner" (the inference is that this was a person other than Ross) did not want the building burned. Henry did not want to call it off. The original plan, prior to the fire, was to substitute old equipment for new. The change in plans was to take out the new equipment and not replace it. "[H]e wanted us to go in there and just completely destroy anything that would be inside so there wouldn't—you wouldn't be able to recognize it, and that what we didn't destroy too well the fire would finish it off so that you couldn't tell what actually had been inside the business prior to the fire."

Henry had "carried out two loads of tape recorders and stereo tapes and what not," and loaded this merchandise into his company van when he was arrested. Ross was arrested at another location a short time later.

■ "For a conspiracy to exist there must be a common design or a mutually implied understanding; an agreement." Morris v. Dodge Country, Inc., 85 N.M. 491, 513 P.2d 1273 (Ct.App.1973).

Ross claims the evidence fails to show a unity of design and purpose for either arson or damage to insured property. In support of this contention he relies on selected items of evidence. For example, Ross relies on the fact that he did not know all the details; did not know when the balance of the $1,000.00 was to be paid; did not get into the discussion when Henry talked about a burglary. In addition, there is nothing showing Ross knew about the change in plans which, as pointed out, was that old equipment would not be substituted for the new equipment which was to be removed.

In asserting that we should rely on selected items of evidence, and on that basis hold the evidence as to conspiracy was insufficient as a matter of law, Ross ignores the applicable rule of appellate review. That rule is that we consider the evidence in a light most favorable to support the verdict, disregarding evidence and inferences to the contrary. Morris v. Dodge Country, Inc., supra.

■■ A conspiracy may be established by circumstantial evidence. Generally, the agreement is a matter of inference from the facts and circumstances. State v. Deaton, 74 N.M. 87, 390 P.2d 966 (1964). The question is whether the circumstances, considered as a whole, show the parties united to accomplish the fraudulent scheme. Morris v. Dodge Country, Inc., supra.

■ The evidence in this case is substantial that Ross and Henry had a common design. That design was to make it appear that Henry's business had been burglarized and vandalized and then set on fire. Ross hired the police officers to carry out the design; paid $200.00 as a down payment; admitted he planned to receive $500.00 for making the arrangements; and took the officers to a meeting with Henry. At the meeting with Henry, the arrangements with Ross were confirmed. This demonstrates a unity of purpose between Ross and Henry. The subsequent change in plans was a change only in a detail of carrying out the scheme; the object of the conspiracy remained intact.

There is substantial evidence of a conspiracy.

*Number of conspiracies.*

Ross asserts the second count, concerning damage to insured property, should not have been submitted to the jury because there was evidence of only one conspiracy. Ross asserts the second count is duplicitous. The State agrees there is evidence of only one conspiracy but asserts this does not mean that Ross could not be convicted of both charges. The State's view is that there could be two convictions, but only one sentence.

■ We agree that only one conspiracy was proved. That one conspiracy was directed toward two criminal acts. "Whether the object of a single agreement is to

commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

■ In claiming there can be two convictions but only one penalty, the State relies on State v. Quintana, 69 N.M. 51, 364 P.2d 120 (1961). *Quintana* is not in point; it deals with the merger of two offenses. Here, there is only one conspiracy and, thus, only one conspiracy offense. Braverman v. United States, supra. Only a single penalty can be validly imposed. Braverman v. United States, supra; see Annot. 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 29, at 44 (1943).

■ In claiming that the count concerning damage to insured property should have been dismissed, Ross overlooks the fact that the conspiracy proven was directed to both counts charged. Since there was only one conspiracy, the two counts alternatively charged the single conspiracy. The result is that the trial court did not err in refusing to dismiss the second count on the basis that it was a duplication of the first count. See Annot. 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed., supra, at 39.

*Special versus general statute.*

Ross asserts he could not be prosecuted for conspiracy to damage insured property because the statute involved is a general one and the arson statute is a special statute which applies to the same facts. See State v. Riley, 82 N.M. 235, 478 P.2d 563 (Ct.App.1970).

Section 40A–15–2, supra, states: "Damaging insured property consists of intentionally damaging property which is insured with intent to defraud the insurance company into paying himself or another for such damage."

The portion of § 40A–17–5, supra, claimed to be the applicable special statute, reads: "Arson consists of maliciously or willfully starting a fire . . . with the purpose of destroying or damaging any property, whether the person's own or another's, to collect insurance for such loss."

■ We need not engage in a comparison of the wording of the two statutes. Section 40A–17–5, supra, applies to starting a fire with the purpose of damaging property in order to collect insurance. Section 40A–15–2, supra, applies to intentional damage to any property with intent to defraud the insurance company into paying for the damage. We assume, but do not decide, that damage by starting a fire is a special provision to be applied where the facts show that only arson is involved. That is not the situation in this case.

There was a conspiracy to damage property by fire; but, there was more. Ross and Henry wanted Henry's business to appear to have been burglarized and vandalized prior to the fire. The final plan was to remove new equipment and destroy what was left. What was not destroyed "too well" was to be finished off by the fire "so that you couldn't tell what actually had been inside" prior to the fire. The conspiracy to burglarize and vandalize was directed to acts not covered by the arson statute. Under the facts, § 40A–17–5, supra, was not a special provision prohibiting the prosecution of Ross under § 40A–15–2, supra, for the aspect of the conspiracy directed toward burglary and vandalism.

*Evidence as to purpose of the conspiracy.*

Section 40A–28–2, supra, defines conspiracy in terms of combining with another "for the purpose of committing a felony." The purpose charged is arson under Count 1 and damaging insured property under Count 2. Ross asserts the evidence as to the purpose is insufficient under both counts.

Because the attack on the evidence under Count 2 is less comprehensive than the attack on the evidence under Count 1, we consider Count 2 first. Under Count 2,

Ross asserts the evidence is insufficient to show an agreement to damage insured property and insufficient to show the existence of insurance. We disagree.

According to the officers, both Ross and Henry made specific references to burglary and vandalism. The balance of the $1000.00 was to be paid when the insurance company paid for the theft and vandalism. The burglar alarm at Henry's business was discussed. According to one of the officers, Henry stated: " 'when you leave the building make sure the alarm is on or my insurance won't cover it if the alarm was off.' " The evidence is to the effect that Ross assured Bingham that Henry had an insurance policy that would cover this type of thing. The evidence is that Henry stated he was "insured against burglaries and against anything of a burglar's nature, he would be insured and covered by this."

■ The evidence reviewed under the first point in this opinion is substantial evidence of a conspiracy to damage property. The evidence reviewed in the preceding paragraph is substantial evidence that the property to be damaged was insured. There is substantial evidence to show that a purpose of the conspiracy was to damage insured property. Section 40A–15–2, supra, provides that damaging insured property is a felony.

Since there is substantial evidence to support the conviction of conspiracy to damage insured property, we do not review the evidence as to the arson count. The reason that evidence as to the arson count is not reviewed is because there is only one conspiracy and only one penalty may be imposed. Braverman v. United States, supra. The evidence being sufficient as to one of the alternative counts charged, the attack on the sufficiency of the evidence fails. State v. Atwood, 83 N.M. 416, 492 P.2d 1279 (Ct.App.1971).

Ross was convicted of each conspiracy count. Sentence was imposed under each count. There being only one conspiracy, only one conviction and sentence is valid. We have determined that the attacks on

the conviction for conspiracy to damage insured property are without merit. Accordingly, we vacate the conspiracy conviction and sentence on the arson count, and affirm the conspiracy conviction and sentence on the count concerning damage to insured property.

The cause is remanded. The trial court is instructed to set aside the present judgment and sentence and enter a new judgment and sentence consistent with this opinion.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).
I concur in the result.

Other serious questions appear in this case which should be answered to protect the State and defendants in the future. This case is one of first impression in New Mexico.

(A) *Arson.*

Section 40A–17–5(A), N.M.S.A.1953 (2nd Repl.Vol. 6) reads in part as follows:

> Arson consists of maliciously or willfully starting a fire . . . with the purpose of destroying or damaging any property, whether the person's own or another's, to collect insurance for such loss.

> (1) Whoever commits arson when the value of the thing destroyed or damaged is one hundred dollars ($100) or less is guilty of a misdemeanor.

*First,* there is no evidence of the value of the property to be destroyed or damaged. Count I of the indictment charged defendant and Mike Henry with a conspiracy "for the purpose of committing a *felony,* to wit: Arson." The trial court instructed the jury that "Arson is a *felony* when the value of the thing destroyed or damaged is over $100.00"; that "Conspiracy consists of knowingly combining with another for the purpose of committing a *felony* within or without the State of New

Mexico." [Emphasis added]. There was no proof of a felony. Defendant was entitled to a directed verdict on Count I.

*Second,* the State had the duty to prove that defendant's purpose was to collect fire insurance for the loss. Mike Henry told one of the police officers that ". . . he's insured against burglaries and against anything of a burglar's nature . . . ." A second police officer testified that Henry said that if the burglar alarm "wasn't operating at the time the business was burglarized, why then his insurance wouldn't pay for any theft or damage to the building;" that payment to the officers for burning everything inside the place "would depend on when the insurance company paid him for the theft and vandalism."

There was no evidence that Mike Henry had fire insurance. He could not "collect insurance for the loss."

The State had the burden of discovering what insurance Henry had on his place of business. The State did not indict Henry because he was to be a State's witness against Ross. Henry never appeared as a witness. He was "long gone." The State never investigated what, if any, insurance Henry carried on his business.

It is obvious that defendant could not be guilty of a conspiracy to commit the felony of arson. Hall v. State, 90 Fla. 719, 107 So. 246 (1925); State v. Dworkin, 307 Mo. 487, 271 S.W. 477 (1925); Commonwealth v. Cooper, 264 Mass. 368, 162 N.E. 729 (1928). A directed verdict should have been granted.

(B) *Damaging Insured Property.*

Section 40A–15–2, N.M.S.A.1953 (2nd Repl.Vol. 6) reads as follows:

Damaging insured property consists of intentionally damaging property which is insured with intent to defraud the insurance company into paying himself or another for such damage.

Penal statutes must be strictly construed in favor of the accused. State v. Clark, 80 N.M. 340, 455 P.2d 844 (1969). We will not limit or change the wording in order to construe it against the accused. State v. Collins, 80 N.M. 499, 458 P.2d 225 (1969).

This statute means that a defendant must intentionally damage property to defraud "the insurance company" into paying for such damage. The State must prove beyond a reasonable doubt that defendant conspired with Henry to damage Henry's property; that the property was insured; and the intent of the parties was to defraud "the insurance company."

The evidence is clear that the conspiracy existed. Did the State prove beyond a reasonable doubt that the property was insured and that the intent of the parties was to defraud the insurance company?

The testimony of two police officers revealed the following facts concerning insurance:

Insurance was mentioned on several occasions.

First, defendant met with the two officers to close a deal whereby the officers were to burn a building belonging to Mike Henry so he could collect insurance. At this meeting, defendant was asked when the officers would be paid "because the insurance company may balk at paying off," and defendant said he was going to have to talk this over with Henry because Henry had an insurance policy that would cover this type of thing.

The next meeting, at which Henry was also present, Henry was asked about his insurance policy and Henry said he was insured against burglaries and against anything of a burglar's nature; that he would be insured and covered; that he did not have the cash to pay the officers and had to wait until the insurance company settled his claim; that he guaranteed payment in two weeks in case the insurance company stalled him off. Henry had a stipulation with the insurance company that Henry had to have a burglar alarm installed and operating. If it was not operating at the time of the burglary, the insurance would not pay for any theft or damage to the building.

At the next meeting, defendant was not present. Henry told the police officers there was a change in plans. Henry did not want the building burned down because the insurance company would take too long to pay him the money or the insurance company would actually find out what happened and not pay any money at all. Henry would take out all the new equipment of any value and not replace it. The officers were to completely destroy anything inside, and what was not destroyed too well, the fire would finish it off.

The best evidence rule in New Mexico is Rule 1002 of the New Mexico Rules of Evidence. Section 20–4–1002, N.M.S.A. 1953 (Repl.Vol. 4, 1973 Supp.). It reads as follows:

> To prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules or by statute.

The secondary evidence rule is Rule 1004. It provides that the original is not required, and other evidence of the contents of a writing is admissible if (1) the originals are lost or destroyed; (2) the originals are not obtainable; (3) the original is in possession of the opponent; or (4) the writing is not closely related to a controlling issue.

The secondary evidence rule is not applicable because no predicate was laid by the State to warrant its use.

In order to establish a violation of the statute, the State must prove the contents of an insurance policy to determine whether the Henry property was insured and the name of the insurance company to be defrauded.

An insurance policy is the best evidence of what it contains. It is the best evidence of the fact that particular property is insured. Unless its absence is satisfactorily explained, parol or secondary evidence is inadmissible. Barnes v. State, 130 Tex. Cr.R. 547, 95 S.W.2d 112 (1936); Posey v. State, 132 Tex.Cr.R. 268, 103 S.W.2d 763 (1937); State v. Elgin, 391 S.W.2d 341 (Mo.1965); Salistean v. State, 115 Neb. 838, 215 N.W. 107 (1927); 53 A.L.R. 1057; 22A C.J.S. Criminal Law § 705.

Defendant objected to any testimony about insurance because it was hearsay and because the only person that could possibly testify as to the existence of insurance would be Mike Henry himself. The objection was overruled. This objection was not sufficient. It did not raise the question of the insurance policy being the best evidence.

The acts and declarations of co-conspirators, in the absence of their partners, are admissible in evidence because this is the means of showing the conspiracy. However, oral proof of the fact that the property was insured is reversible error where proper objection is made that the policies themselves were the best evidence. Posey v. State, supra; Barnes v. State, supra. "It is to be presumed that if timely objection[s] had been made the trial court would have required either the policies to have been offered or sufficient foundation laid for the introduction of secondary evidence. Such evidence having been admitted without objection, it will be considered as competent proof that the property was insured and the insurance was in force at the time of the fire." Salistean v. State, supra.

The defendant did not object because the insurance policy was the best evidence. He did not preserve the error for review. State v. Lott, 73 N.M. 280, 387 P.2d 855 (1963).

(C) *Special vs. General Statute.*

We should decide whether arson is a special statute and whether damaging insured property is a general statute. If arson is a special statute, conviction under the general statute was improper. State v. Riley, 82 N.M. 235, 478 P.2d 563 (Ct.App. 1970).

Section 40A–15–2, Damaging Insured Property, was enacted in 1963 under the Revised Criminal Code. Laws 1963, ch. 303, § 15–2.

Section 40A–17–5, Arson and Negligent Arson, was enacted by Laws 1970, ch. 39, § 1. The title of the act is: "AN ACT relating to crimes; defining the crimes of arson and negligent arson." It repealed the previous section on arson under the Revised Criminal Code. Laws 1963, ch. 303, § 17–2. The new section enacted in 1970 is a part of the Revised Criminal Code.

The question is: Would the general statute, "Damaging insured property", standing alone, include the same matter as the special act, "Arson", and conflict with it, or can both statutes be read together and harmonized?

Both statutes do not condemn the same offense. "Damaging insured property" applies only where the accused, "with intent to defraud the insurance company", damages the property. The "arson" statute applies only where the accused seeks "to collect insurance for such loss." Both statutes can be read together and harmonized.