704 P.2d 461

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**David Allen HALL,
Defendant-Appellant.**

**No. 7927.**

Court of Appeals of New Mexico.

July 18, 1985.

Winston Roberts-Hohl, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Santa Fe, Carol J. Vigil, Sp. Asst. Atty. Gen., Tesuque, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals from convictions for promoting prostitution and conspiracy to promote prostitution, raising four issues:

1. Whether the trial court abused its discretion in refusing to sever defendant's case from the other defendants' cases;

2. Whether the presence of an attorney for one of the co-defendants in the grand jury room required dismissal of the indictment;

3. Whether a police officer should have been permitted to give his opinion that the Club of Albuquerque was a front for prostitution; and

4. Whether there was sufficient evidence to support the convictions.

Issues listed in the docketing statement, but not briefed, are abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). We affirm.

## FACTS

Charles Holman operated the Club of Albuquerque, whose membership numbered between one and two thousand persons. The Club promoted "parties" for individuals inclined toward the "swinging" life-style. Evidence reflected that the term "party" had two distinct meanings: social intercourse and sexual intercourse. Defendant acted as bouncer at the Club house. He and other codefendants were tried together.

## DISCUSSION

### 1. Severance.

Defendant contends that his case, involving only three counts of the indictment, should have been severed from the cases of the other sixteen defendants who were charged in the thirteen-count indictment.

■ There is no record of the original hearing on the severance motions. It is defendant's burden to insure that this court has a record adequate to review the issues, *Berlint v. Bonn*, 102 N.M. 394, 696 P.2d 482 (Ct.App.1985), and, in the absence of a record, there is nothing to review, *State v. Romero*, 87 N.M. 279, 532 P.2d 208 (Ct. App.1975).

■ Defendant attempts to avoid this rule by requesting that the court review the trial record. *See State v. Martinez*, 94 N.M. 436, 612 P.2d 228 (1980). If it is defendant's contention that the prejudice from lack of a severance became apparent during trial, it was incumbent on him to renew his motion for severance during tri-

al, or at the close of evidence, *State v. Garcia*, 84 N.M. 519, 505 P.2d 862 (Ct.App. 1972), and to point out in his brief where he had done so. *State v. Martin*, 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977). Failing that, defendant has waived any error. *Garcia; Martin. See also State v. Gammill*, 102 N.M. 652, 699 P.2d 125 (Ct.App.1985).

Defendant finds himself in a situation similar to that which confronted the defendants in *State v. Andrada*, 82 N.M. 543, 484 P.2d 763 (Ct.App.1971). In that case defendants sought review of the denial of their motions to sever, but without a record. This court refused to review the issue there, and we refuse to do so here.

### 2. Grand jury.

Relying on the rule of *Davis v. Traub*, 90 N.M. 498, 565 P.2d 1015 (1977), that the presence of an unauthorized person before the grand jury requires dismissal of the indictment without the necessity of showing prejudice, defendant claims the presence of Lynn Thornton's attorney at the grand jury proceedings mandates that result.

An attorney for a target witness is a person permitted to be present during the taking of testimony by the grand jury. NMSA 1978, § 31–6–4(B) (Repl.Pamp.1984). Therefore, the issue turns on whether Lynn Thornton was a target witness.

Defendant claims Thornton was not a target witness because, prior to giving her testimony before the grand jury, she "firmed up a deal" with the prosecutor whereby if she would plead guilty to one count of promoting prostitution, she would receive no jail time, and she would be given absolute immunity as to any other charges. Defendant's contention rests on his assertion that, "A target is one who may eventually be tried for an indictment." No authority is cited for this statement. To the contrary, our cases, while not expressly defining a target witness, seem to embrace a broader definition. In *State v. Cruz*, 99 N.M. 690, 662 P.2d 1357 (1983), and *Rogers v. State*, 94 N.M. 218, 608 P.2d 530 (Ct.App. 1980), a target was the defendant, a person to be indicted. In *State v. Gonzales*, 96 N.M. 513, 632 P.2d 748 (Ct.App.1981), a target was anyone who was the focus of a grand jury's investigation.

■ Under any of these definitions, Thornton was a target. She was named in three counts of the prosecutor's proposed indictment. She was read her rights as a target. She was indicted on the three counts. She pleaded guilty to one of the counts. The nolle prosequi on the other counts was not entered until months later. Her deal required certain performances on her part in return for which the prosecutor would do certain things and make certain recommendations. At the time she testified, she was indeed a target, a person to be indicted.

Accordingly, her attorney was authorized to be present, Section 31–6–4, and the indictment did not have to be dismissed. *Compare Davis v. Traub*.

### 3. Opinion testimony.

Joseph Polisar, a police officer, investigated the case. Among other things, he posed as a businessman and responded to one of the Club's ads. He tape recorded his dealings with club employees. The state qualified Polisar as an expert in the investigation of prostitution, as follows: Polisar had experience in investigating hundreds of prostitution cases; he had investigated street prostitution, massage parlors, escort services, and more organized businesses; he also keeps up on techniques by reading publications and communicating with law enforcement agencies throughout the country; he has attended seminars and schools on the subject and is the training coordinator for New Mexico; and he is familiar with all aspects of prostitution and has been declared an expert on the matter before.

Outside of the presence of the jury, on tender, Polisar explained how business entities run as fronts for prostitution and attempt to avoid detection and liability. First, they screen their customers, typically by requiring the customer to call on the telephone and leave a name and number. Then, the business will call the customer

back to verify that the customer is where and who he says he is. Second, the businesses typically contract with their employees so that the employees promise that they will not engage in prostitution.

In front of the jury, Polisar testified to his familiarity with various types of prostitution. Polisar testified that non-street prostitution has two things in common. First, it screens its customers just as Polisar was screened in this case when he first called the Club. Second, it is a business entity that looks legitimate and the business has a relationship with its employees that facially excludes prostitution. The business entity in this case had the same sort of relationship with its employees as massage parlors and escort services have with their employees.

On appeal, as he did at trial, defendant objects to Polisar's testimony. Defendant first contends that Polisar's experience in investigating massage parlors and escort services does not qualify him to render an opinion on swingers' clubs. Defendant next contends that Polisar was really testifying as to the intent of defendants, an issue as to which only a psychologist or psychiatrist could claim expertise. Also, defendant contends that Polisar's testimony could not have assisted the jury, that it was simply a lay opinion without a rational connection between the conclusion and the observed fact. *See* NMSA 1978, Evid.R. 702 (Repl.Pamp.1983).

■ Evidence Rule 702 defines an expert as one qualified "by knowledge, skill, experience, training or education." Whether a witness has the qualifications to testify lies within the discretion of the trial court and its determination will not be disturbed absent an abuse of discretion. *Wood v. Citizens Standard Life Insurance Co.,* 82 N.M. 271, 480 P.2d 161 (1971). *See also State v. Rose,* 79 N.M. 277, 442 P.2d 589 (1968). The fact that Polisar had no experience with swingers' clubs would not disqualify him as an expert concerning prostitution generally, given his experience and training in closely related areas. We find no abuse of discretion as to the deter-

mination that Polisar qualified as an expert.

■ With regard to defendant's second and third contentions, the questions of the admissibility of this type of evidence has not been previously addressed by the appellate courts of this state. Cases from other jurisdictions can be found in Annot., 100 A.L.R.2d 1433 (1965) (Expert testimony as to modus operandi of criminals with request to particular types of crimes). As stated in that annotation, "[i]n criminal prosecutions, expert testimony of the modus operandi of criminals is often tendered for the purpose of showing a connection between defendant's actions and a criminal motive, indicating that certain behavior which may not appear, in itself, criminal, is actually a means of committing a crime." *Id.* at 1434. Expert testimony of this sort is generally admissible. *Id.* at 1436. *See also United States v. Jackson,* 425 F.2d 574 (D.C.Cir.1970) (expert testimony of modus operandi of pickpockets); and *United States v. Maher,* 645 F.2d 780 (9th Cir. 1981) (expert testimony that drug smugglers engage in counter-surveillance to avoid detection admissible under Evid.Rule 702). Moreover, this may be said to be the type of case where an average juror would have no basis for evaluating the evidence without the assistance of an expert. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02] at n. 2. (1982).

The determination of the probative value and other relevant considerations are left to the sound discretion of the trial court. *State v. Tafoya,* 94 N.M. 762, 617 P.2d 151 (1980). We found no abuse of that discretion in admitting the expert testimony of Polisar.

**4. Sufficiency of the evidence.**

Defendant finally contends that the evidence was insufficient to support his convictions. Included in this issue is a concession that, if Polisar's testimony was properly admitted, there was some basis to establish the charges. Having held that Polisar's testimony was admissible, we agree

with defendant that this evidence supports the charges.

Promoting prostitution is proscribed in NMSA 1978, Section 30–9–4 (Repl.Pamp. 1984). It includes a person, not a prostitute or patron, knowingly maintaining or managing a place where prostitution is allowed or participating in its maintenance or management. No formal UJI Criminal Jury Instruction has been adopted defining the offense of prostitution. The instructions given by the trial court defining prostitution followed the language of the statute. Section 30–9–4. The jury was instructed accordingly that prostitution was sex for hire.

· The briefs indicate that the Club of Albuquerque was a "swingers' club." It maintained an office and a party house at different locations. It advertised in the papers. When people answered the ads, they were invited to the office. There, the Club would be described. There were various memberships at various prices, from a one-night party to a longer membership. A red notebook showed club benefits and various membership contracts. There were memberships for single males, single females, and couples. Membership entitled members to use the club house to party and engage in sex.

There are two areas of evidence that defendant challenges as being insufficient to support the charges. First, he seems to claim that the Club was legitimate in that it did not promote prostitution. Rather, it was simply a place where people could meet. Second, if prostitution was practiced, it was without defendant's knowledge. The evidence, however, was to the contrary.

At least one woman was paid by defendant for the specific act of having sex with club members. Further, there was testimony in the record concerning a conversation between defendant and co-defendant Holman indicates that they hired women to take care of the party house on the condition that they would attend parties and have sex with club members. Defendant was described as an employee of the Club and a bouncer for the party house. While defendant attempts to minimize the testimony of Lynn Thornton, by stressing that her testimony established the Club as a legitimate enterprise for alternative lifestyles, he ignores that, once non-legitimacy (i.e., sex for hire) was established by Ms. Wagner's testimony (she was paid for sex), Thornton's testimony, that defendant was like a pimp who prodded the women like cattle, constituted evidence of defendant's management or maintenance of the place where prostitution was allowed. This was sufficient evidence to support the promoting charge and, by itself, shows enough cooperation between defendant and Holman to support the conspiracy charge. *State v. Johnston*, 98 N.M. 92, 645 P.2d 448 (Ct.App.1982).

## CONCLUSION

We affirm.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.