1998-NMCA-115

966 P.2d 760

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David TISTHAMMER, Defendant–
Appellant.**

No. 18,328.

Court of Appeals of New Mexico.

June 9, 1998.

Certiorari Denied, No. 25,256,
Aug. 13, 1998.

Tom Udall, Attorney General, Santa Fe, Max Shepherd, Ass't Attorney General, Albuquerque, for Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Ass't Appellate Defender, Santa Fe, for Appellant.

*OPINION*

PICKARD, Judge.

{1}   In this case, we consider whether the Grand Jury Act or the Public Defender Act provides a target witness testifying before a grand jury with a right to counsel such that an indictment must be dismissed if counsel is not present and there is no express voluntary, knowing, and intelligent waiver of counsel's presence.   We hold that they do not.   Defendant appeals the denial of his motion seeking to dismiss a grand jury indictment for multiple counts of burglary, conspiracy, and other related charges because Defendant did not have an attorney present when he testified as a target witness before the grand jury.   After being convicted of all charges at trial, Defendant asserts two additional challenges:   (1) whether there was insufficient evidence to support the convictions and (2) whether under the general-specific rule of statutory construction, he should have been charged with larceny of a firearm and burglary instead of aggravated burglary.   We affirm.

**FACTS**

{2}   Defendant was arrested on June 24, 1996, in connection with a number of crimes arising from six burglaries in Roosevelt County.   Defendant was taken before the magistrate judge who appointed the Public Defender to represent Defendant.   Two and a half weeks later, on July 12, 1996, Defendant received a letter notifying him that he was the target of a grand jury investigation. The letter also informed Defendant that the grand jury would convene on Monday, July 15.

{3}   Defendant wanted to testify before the grand jury.   While incarcerated, he phoned Thomas Harden (Harden), a Public

Defender contract attorney, who was representing Defendant in separate proceedings. Harden informed Defendant that he could not accompany Defendant before the grand jury because Harden had not received notification that he was representing Defendant in that case. Defendant then attempted, unsuccessfully, to reach the public defender who had represented him in a previous case.

{4} On Monday morning, Defendant appeared at the grand jury. Defendant explained to the prosecutor that he was appearing without counsel. The prosecutor suggested that Defendant call Harden. Defendant spoke to Harden, who once again told Defendant that he could not attend the grand jury. Defendant consulted with Harden about the questions the prosecutor intended to ask, and the prosecutor consulted with Harden about the questions Defendant wanted the State to ask.

{5} At the grand jury hearing, the State presented testimony from five individuals whose homes had been burglarized and from the manager of a business that had also been burglarized. Two law enforcement officers testified, as did Ray Chavez (Chavez), Defendant's brother-in-law. Chavez testified that he and Defendant had committed all six burglaries and that Defendant had decided which places to burglarize.

{6} Defendant then took the stand. Prior to testifying, the prosecutor informed Defendant that he had the right to consult with an attorney before testifying and that if Defendant had an attorney, the attorney could be present during his testimony. Defendant immediately began to testify and denied committing the burglaries with Chavez. The prosecutor asked Defendant if he wished to make a statement about Chavez's motive to implicate him in the burglaries. Defendant explained that Chavez had been caught burglarizing a house and was trying to get out of trouble by blaming Defendant, that Chavez did not like Defendant, and that Chavez had been in prison before.

{7} The prosecutor then questioned Defendant about where he was at the time of the various burglaries. Defendant stated that he was either at work or at home, and he needed to check with his wife and his employer to be sure. The prosecutor then asked Defendant whether his wife was in custody for participating in one of the burglaries, and Defendant stated that his attorney had advised him to say what he wanted to say and then quit and that Defendant wanted to quit. The grand jury indicted Defendant on four counts of burglary, two counts of aggravated burglary, six counts of larceny, six counts of conspiracy, and one count of criminal damage to property.

{8} On the day after the indictment was returned, Harden was officially appointed to represent Defendant. Harden filed a motion in district court alleging that the grand jury indictment should be dismissed because Defendant was denied his statutory right to have his attorney present. Defendant testified at the hearing that he had not waived his right to have an attorney present. Harden argued that had the State postponed the hearing and had Harden been present with Defendant, he would have provided the prosecutor with a list of questions to ask Defendant. Harden also stated that he could also have possibly presented an alibi for Defendant. The prosecutor argued that the State was not required to schedule grand jury proceedings at Defendant's convenience and that Defendant had an opportunity to consult with an attorney before he testified. The prosecutor also explained that the Public Defender Act and the Indigent Defense Act do not mandate representation of a defendant before the grand jury. The trial court found that even if an attorney had been present, the attorney would not have a right to participate in the proceedings and that Defendant was advised that he could stop speaking if he wished to consult with an attorney, which is the same right Defendant would have had if counsel were present. The trial court denied the motion.

{9} At trial, Defendant did not testify; nor did he present an alibi. Defendant did, however, attack Chavez's credibility. The jury convicted Defendant of all charges.

## DISCUSSION

### I. STATUTORY RIGHT TO COUNSEL

{10} Defendant claims that the trial court erred in denying his motion to dismiss

the indictment. Defendant argues that under NMSA 1978, § 31–6–4(B) (1981), he had a statutory right, as a target witness, to have counsel present during his grand jury testimony. Alternatively, Defendant argues that under the Public Defender Act, NMSA 1978, §§ 31–15–1 to –12 (1973, as amended through 1993), he was entitled to representation by counsel in all proceedings, including the taking of his testimony before the grand jury. We address each of Defendant's arguments in turn.

## A. The Grand Jury Act

{11} Defendant explains that he wanted to exonerate himself by testifying before the grand jury and he wanted an attorney to help him. Defendant contends that Section 31–6–4(B) creates a statutory right to counsel for target witnesses who wish to testify before the grand jury. Defendant argues that he was denied this right and his indictment should therefore be dismissed. We disagree.

{12} In interpreting a statute we seek to give effect to the legislature's intent. *See Roth v. Thompson*, 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992). All parts of a statute must be read together to ascertain legislative intent. *See Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983). We read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole. *See General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985).

{13} There are three references in Section 31–6–4 relevant to Defendant's argument that he had a statutory right to counsel. Each of these references leads us to the conclusion that the legislature was not creating a statutory right to counsel before the grand jury, but rather was authorizing the presence of counsel for target witnesses who have counsel.

{14} Section 31–6–4(B) provides that only "the grand jury, the persons required or entitled to assist the grand jury and the attorney, *if any*, of the target witness" may be present during the taking of testimony

before the grand jury. (Emphasis added.) This provision, authorizing who may be present during the taking of testimony, is concerned with maintaining the secrecy and independence of grand jury proceedings. *See Davis v. Traub*, 90 N.M. 498, 499–500, 565 P.2d 1015, 1016–17 (1977) (stating that the purpose of the rule prohibiting unauthorized persons before the grand jury is to protect the secrecy of the proceedings and prevent undue influence).

{15} Many jurisdictions prohibit a target witness from being accompanied by counsel when appearing to testify before the grand jury. *See* 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 8.13(b), at 705 (1984). In these jurisdictions, if the target witness needs advice during the examination, the witness has to break off the examination, leave the room, consult with counsel waiting outside the room, and then return for continued examination. This may happen repeatedly during the course of the target witness's testimony.

{16} Section 31–6–4(B) changes that practice by permitting the target witness to be accompanied by counsel, if the target witness has counsel, into the grand jury room to advise the witness during the examination. There is a need to authorize counsel's presence because otherwise counsel would be considered an unauthorized person who compromises the secrecy of the grand jury proceedings and therefore requires the dismissal of any indictment resulting from those proceedings. *See Davis*, 90 N.M. at 499–500, 565 P.2d at 1016–17.

{17} Moreover, the phrase "if any" in Section 31–6–4(B) indicates that the legislature did not intend to create a statutory right to counsel. Instead the legislature created an opportunity for target witnesses who have an attorney to have that attorney accompany them into the grand jury room during their testimony. *See id.* Although we are aware that the magistrate judge had ordered that Defendant be represented by counsel, the fact remains that no attorney had been appointed to represent him at the time the grand jury convened to hear his testimony. Since Defendant's right to have an attorney present in the grand jury room under Sec-

tion 31–6–4(B) is conditioned on having an attorney appointed to represent him in the first place, and Defendant did not have such an attorney at the time of his grand jury testimony, we cannot say that Defendant's rights under Section 31–6–4 were violated.

{18} Section 31–6–4(C) also supports our position that Defendant had no statutory right to counsel under the Grand Jury Act. Section 31–6–4(C) states that an attorney for the target witness is a person entitled or required to assist the grand jury. Arguably, at first reading Section 31–6–4(C) might appear to support Defendant's argument that counsel for the target witness is "required." However, the very next sentence states that "[i]f a target witness has his attorney present," the attorney may be present only during the target witness's testimony. Once again the use of the word "if" indicates that the legislature did not intend to create a mandatory requirement that an attorney must accompany the target witness. *See State v. Albin*, 104 N.M. 315, 319, 720 P.2d 1256, 1260 (Ct.App.1986) (target witness before the grand jury *may* have his attorney present with him when he appears to testify); *State v. Hall*, 103 N.M. 207, 209, 704 P.2d 461, 463 (Ct.App.1985) ("attorney for a target witness is a person *permitted* to be present during the taking of testimony by the grand jury") (emphasis added). Rather, Section 31–6–4(C) simply evinces an intent to allow target witnesses to have their attorneys accompany them into the grand jury room during their testimony if such attorneys have been appointed or retained to represent them.

{19} Finally, although there was no statutory right to counsel under the Grand Jury Act, Defendant has suggested that the State could have postponed the proceedings to allow him time to obtain an attorney. Although the State could have postponed the proceedings, because we hold the Grand Jury Act does not provide a right to counsel at the grand jury, we also hold that the State was not required to postpone the grand jury proceedings, at least under the circumstances of this case. In this case, we deem it important that Defendant has not suggested that the State acted with any improper motive in choosing to proceed with the grand jury and not postpone.

## B. The Public Defender Act

■ {20} Defendant claims that under the Public Defender Act, he was entitled to be represented by counsel during his testimony before the grand jury. Defendant explains that at the time of his initial appearance in magistrate court, he was charged with several crimes. Thus, because he was charged with a crime, he was entitled to representation by counsel at all future proceedings, including the grand jury hearing. The State contends that Defendant was not charged with any crime and therefore not entitled to counsel. Nonetheless, the record proper states that at the initial appearance, Defendant was "being charged with the following" crimes and listed burglary, conspiracy, and other related charges.

■ {21} The Public Defender Act states that:

The district public defender shall represent every person without counsel who is financially unable to obtain counsel and who is charged in any court within the district with any crime that carries a possible sentence of imprisonment. The representation shall begin not later than the time of the initial appearance of the person before any court and shall continue throughout all stages of the proceedings against him, including any appeal, as directed by the chief.

Section 31–15–10(B). Defendant, having appeared in court and having been charged with a crime, was entitled to be represented by counsel in all future proceedings against him under the Act. *See id.* Although Defendant was entitled to be represented by counsel at the time he appeared before the grand jury, the fact that he did not have counsel during that proceeding does not require dismissal of the indictment. Even if Defendant had appeared with counsel before the grand jury, the role an attorney can play in that proceeding is so limited that Defendant has not shown the requisite degree of prejudice. In short, we are at a loss as to how the presence of counsel could have changed the grand jury's vote.

{22} An attorney appearing with a target witness before the grand jury can only advise the witness. *See* § 31–6–4(C). The attorney cannot object to questions, cannot speak to the prosecutor or to the grand jury members, and when advising the target witness, must take care that the attorney is not overheard. *See id.* Moreover, a grand jury hearing does not determine guilt or innocence, but rather only makes a probable cause determination. *See Buzbee v. Donnelly*, 96 N.M. 692, 704–05, 634 P.2d 1244, 1256–57 (1981) (stating that the evidence to show probable cause is less than that required at trial to prove guilt beyond a reasonable doubt); *State v. Martinez*, 97 N.M. 585, 588, 642 P.2d 188, 191 (Ct.App.1982) (stating that grand jury determines probable cause to accuse); *see also Cassell v. Texas*, 339 U.S. 282, 302, 70 S.Ct. 629, 94 L.Ed. 839 (1950) (Jackson, J., dissenting) ("[The grand jury's power] is only to accuse, not to convict. Its indictment does not even create a presumption of guilt; all that it charges must later be proved before the trial jury, and then beyond a reasonable doubt."). It would require sheer speculation for us to hold that, had counsel been present with Defendant during his testimony, the grand jury would not have returned an indictment. *Cf. State v. Penner*, 100 N.M. 377, 379, 671 P.2d 38, 40 (Ct.App. 1983) ("Because the prejudice involved is prejudice to the defendant in the bringing of a criminal charge, defendant's burden is to establish that his missing testimony would have changed the vote of the grand jury on the issue of probable cause.").

{23} Defendant argues that he was prejudiced because his attorney could have presented an alibi or submitted questions for the prosecutor to ask if his attorney had been present with him in the grand jury room. However, even at trial, Defendant never presented an alibi. Moreover, Defendant was able to consult with Harden prior to testifying. Harden also spoke to the prosecutor and asked what questions would be asked and requested some questions for the prosecutor to ask. In accordance with Harden's request, the prosecutor asked Defendant to explain Chavez's motive for implicating Defendant in the burglaries. Also, Defendant was advised by his attorney to say what he wanted to say and not to answer additional questions. Defendant followed this advice during his examination and refused to answer additional questions. Thus, as the trial court noted, the presence of counsel at the grand jury hearing would have accomplished little more than what was done here.

{24} Additionally, Defendant has not made any assertion that the State used his "uncounseled" grand jury testimony against him at trial. In fact, Defendant did not testify at trial. Nor has Defendant suggested that his decision not to testify at trial was motivated by fear that he could be impeached by his prior grand jury testimony. Finally, given that dismissal of a grand jury indictment is a rare occurrence, we hold that the circumstances in this case do not require such a serious measure. *See United States v. Yost*, 24 F.3d 99, 102 (10th Cir.1994) (only in rare circumstances will indictment be dismissed following a conviction). We expressly do not exclude the possibility that under different facts, an indictment might have to be dismissed. However, given the minimal nature of the standard of proof required for indictment, *see Buzbee*, 96 N.M. at 704–05, 634 P.2d at 1256–57, and given the attorney's limited ability to help a defendant by his presence in the grand jury room, we cannot say that a denial of counsel at the grand jury rises to the level of structural defect recognized in *State v. Rodriguez*, 114 N.M. 265, 268, 837 P.2d 459, 462 (Ct.App.1992), as argued by Defendant. Given the obvious lack of any impact upon Defendant in this particular case from appearing without counsel, dismissal was not required under the facts of this case.

## II. INSUFFICIENT EVIDENCE

{25} Defendant claims that there was insufficient evidence from which the jury could find that he was involved in the six burglaries. Defendant argues that the only evidence of his involvement in the burglaries was the testimony of Chavez, an ex-felon who cut a deal with the State and whose testimony is not worthy of belief. We disagree. It is the province of the jury to determine a witness's credibility and we will not substitute our judgment for theirs. *See State v.*

*Sanders*, 117 N.M. 452, 457, 872 P.2d 870, 875 (1994); *State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992) (factfinder determines weight and credibility of witnesses' testimony).

{26} Defendant also contends that the State did not present sufficient evidence from which to find beyond a reasonable doubt that he was involved in six separate conspiracies. The evidence established that Defendant and Chavez committed one burglary in October 1995 and five burglaries within an eleven-day span in April 1996. Chavez testified that Defendant would choose the places to burglarize because Chavez was unfamiliar with Roosevelt County. Defendant argues that at most this testimony establishes evidence of two conspiracies. Defendant explains this is because the October burglary, while involving Chavez and Defendant, also included additional participants. Moreover, the October burglary is separated from the April burglaries by a significant period of time.

{27} Defendant further contends that each of the five April burglaries did not involve a separate conspiracy, but rather that the "crime spree" was driven by one single agreement to commit multiple burglaries. The number of agreements to break the law is the determining factor in deciding the number of conspiracies. *See Sanders*, 117 N.M. at 457, 872 P.2d at 875; *State v. Ross* 86 N.M. 212, 214–15, 521 P.2d 1161, 1163–64 (Ct.App.1974).The question of how many agreements existed is reviewed under a sufficiency-of-the-evidence standard. *Sanders*, 117 N.M. at 457, 872 P.2d at 875. This standard requires us to view the evidence in the light most favorable to the State, resolving all conflicts and indulging all reasonable inferences in support of the jury's verdict. *Id.* at 456, 872 P.2d at 874. Additionally, circumstantial evidence may be used to establish a conspiracy. "Generally, the agreement is a matter of inference from the facts and circumstances." *Ross*, 86 N.M. at 214, 521 P.2d at 1163.

{28} Defendant argues that Chavez never testified that the two men met in advance to discuss which places to burglarize. However, even if Defendant had decided, prior to meeting with Chavez, which residences or businesses to burglarize, he still had to show that place to Chavez and then the two men had to reach a new and separate agreement to burglarize that particular place on that particular day. It is a reasonable inference for the jury to conclude that the two men did not agree in advance to commit five burglaries of five particular residences and businesses on certain days. Thus, the jury could find that each burglary was the product of a separate and distinct agreement.

{29} Furthermore, we are not persuaded by Defendant's reliance on *State v. Orgain*, 115 N.M. 123, 127, 847 P.2d 1377, 1381 (Ct. App.1993), in arguing that this Court found one conspiracy in a case where four stolen checks were passed at different times within a one month period. The *Orgain* decision did not hold, as Defendant argues, that crimes occurring on separate dates are not evidence from which a jury could infer separate agreements. Rather, *Orgain* held that the only way the jury in that case could have found evidence of four separate agreements would have been to fragment the testimony of one witness by believing the witness's testimony as to one circumstance but disbelieving the witness as to another. *Id.* This is not the situation present in this case.

{30} Moreover, Defendant's reliance on *State v. Jackson*, 116 N.M. 130, 860 P.2d 772 (Ct.App.1993), is also misplaced. In *Jackson*, this Court found evidence of one criminal conspiracy despite the fact that two victims were robbed and murdered. *Id.* at 134, 860 P.2d at 776. The evidence in that case established that the two defendants originally agreed to rob one victim, but upon picking up two victims at a bar, the "original conspiracy matured and expanded to include the additional objective of robbing two victims rather than one." *Id.* Important to this Court's decision was the fact that the two murders were committed very close in time to each other, at similar locations, with similar actions, by the same participants—the two victims were shot one after the other, both murders occurred on the same night at Sandia Crest, and both victims were shot before being robbed by the defendants. *Id.* at 131, 860 P.2d at 773. Therefore, in that case only one conspiracy was established.

{31} In this case, however, the April burglaries were committed days apart, and the October burglary was separated from the April burglaries by several months. Furthermore, the burglaries were committed at different locations and different items were stolen at each location. *See State v. Hernandez*, 104 N.M. 268, 277–78, 720 P.2d 303, 312–13 (Ct.App.1986) (two conspiracies existed where defendant participated in two drug sales, separated by time, location, and price). Thus, we hold that there was sufficient evidence from which the jury could find Defendant committed six separate conspiracies.

## III. AGGRAVATED BURGLARY

{32} Defendant was charged with and convicted of two counts of aggravated burglary under NMSA 1978, § 30–16–4 (1963), which stemmed from the theft of firearms at two residences. Defendant contends that larceny of a firearm under NMSA 1978, § 30–16–1 (1987), supersedes the aggravated element of the aggravated burglary statute. Therefore, Defendant explains, he should have been charged with larceny of a firearm and simple burglary instead of aggravated burglary. *See State v. Blevins*, 40 N.M. 367, 368, 60 P.2d 208, 209 (1936) (specific statute controls over general statute).

{33} Statutory construction is a question of law reviewed de novo on appeal. *See State v. Arellano*, 1997–NMCA–074, ¶ 3, 123 N.M. 589, 943 P.2d 1042. Under the general-specific rule, if one statute deals with a subject in general and comprehensive terms, and another statute addresses part of the same subject matter in a more specific manner, the latter controls unless the two can be harmonized. *See id.* § 4. Additionally, if both a general and a specific statute address the same criminal conduct, the special statute should govern " 'to the extent of compelling the state to prosecute under it.' " *State v. Yarborough*, 1996–NMSC–068, ¶ 26, 122 N.M. 596, 930 P.2d 131 (quoting *Blevins*, 40 N.M. at 369, 60 P.2d at 210).

{34} We reject Defendant's argument that he should have been charged with larceny and burglary because we hold that the general-specific rule does not apply in this case. As explained in *State v. Ibn Omar-Muhammad*, 102 N.M. 274, 277–78, 694 P.2d 922, 925–26 (1985), the general statute must include the same matter as the specific statute and if, under the *Blockburger* test, each statute includes an element that the other does not, the general-specific rule is inapplicable. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Whitaker*, 110 N.M. 486, 488–89, 797 P.2d 275, 277–78 (Ct.App.1990).

{35} The larceny of a firearm statute, Section 30–16–1, states:

> Larceny consists of the stealing of anything of value which belongs to another.
>
> ***
>
> Who ever commits larceny when the property of value stolen is a firearm is guilty of a fourth degree felony when its value is less than two thousand five hundred dollars ($2,500).

*Id.* Section 30–16–4(B) of the aggravated burglary statute states that:

> Aggravated burglary consists of the unauthorized entry of any ... dwelling ... with intent to commit any felony or theft therein and the person either:
>
> ***
>
> B. after entering, arms himself with a deadly weapon[.]

The larceny of a firearm statute, unlike the aggravated element of aggravated burglary, does not require proof of an unlawful entry. Larceny of a firearm also requires proof that the firearm was stolen, while the aggravated element does not. *Compare* § 30–16–1 *with* § 30–16–4(B).

{36} Indeed, it appears that Defendant acknowledges these missing elements in the two statutes as he asks us to imply the elements of a third statute, burglary under NMSA 1978, § 30–16–3 (1971), in determining whether the general-specific rule applies. This we decline to do. The general-specific rule requires us to compare the statutory elements of the two statutes at issue. *See Yarborough*, 1996–NMSC–068, ¶ 26, 122 N.M. 596, 930 P.2d 131; *Ibn Omar–Muhammad*, 102 N.M. at 277–78, 694 P.2d at 925–26; *Arellano*, 1997–NMCA–074, ¶ 8, 123 N.M. 589, 943 P.2d 1042; *Wilson v. Grant County*,

117 N.M. 105, 107, 869 P.2d 293, 295 (Ct.App. 1994). Bringing in the statutory elements of a third statute, as Defendant asks us to do, would contravene this well-established rule.

{37} Moreover, adopting Defendant's argument would hinder the legislative intent to enhance the penalty for committing a burglary while armed with a deadly weapon—"to deter potential criminals from the use or possession of firearms ... which escalate the possibility of violence." *State v. Luna*, 99 N.M. 76, 78, 653 P.2d 1222, 1224 (Ct.App. 1982). Therefore, we hold that Defendant was properly charged with aggravated burglary.

**CONCLUSION**

{38} We *affirm.*

{39} **IT IS SO ORDERED.**

BOSSON and ARMIJO, JJ., *concur.*