**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 6 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DAVID TISTHAMMER,

　　　　　Petitioner-Appellant,

v.

JOE WILLIAMS, Warden, Lea
County Correctional Facility;
ATTORNEY GENERAL FOR
THE STATE OF NEW MEXICO,

　　　　　Respondents-Appellees.

No. 00-2302
(D.C. No. CIV-99-909 LH/WWD)
(D. N.M.)

---

ORDER AND JUDGMENT *

---

Before **BRISCOE** and **MURPHY** , Circuit Judges, and **OBERDORFER** , Senior
District Judge. **

---

*This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable Louis F. Oberdorfer, Senior District Judge, United States District
Court, District of Columbia, sitting by designation.

# I. INTRODUCTION

David Tisthammer brings this appeal from an order of the district court dismissing his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Following a jury trial, Tisthammer was convicted in New Mexico state court of two counts of aggravated burglary, four counts of burglary, six counts of larceny, six counts of conspiracy, and one count of criminal damage to property. After filing a direct appeal and post-conviction proceeding in state court, Tisthammer filed the instant § 2254 petition raising challenges to the state grand jury proceedings that ultimately led to his indictment and conviction. The district court denied Tisthammer's request for habeas relief and dismissed the action with prejudice. In a previous order, this court appointed counsel to represent Tisthammer and granted a certificate of appealability as to the following two claims: (1) the failure to provide Tisthammer an attorney at the time of his state grand jury proceedings violated his right to counsel under the Sixth and Fourteenth Amendments; and (2) compelling Tisthammer to testify before the grand jury handcuffed and shackled violated his Fourteenth Amendment right to due process. Upon review of the parties' briefs and submissions, this court exercises jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c) and **affirms** the denial of habeas relief.

-2-

## II. BACKGROUND

### A. Factual Background

The investigation and eventual prosecution of Tisthammer began with the arrest in Texas on burglary charges of his brother-in-law, Ray Chavez. As part of the plea agreement accompanying his guilty plea to the Texas burglary charges, Chavez identified Tisthammer as an accomplice in six burglaries that occurred in Roosevelt County, New Mexico in October of 1995 and April of 1996. Based on Chavez's allegations, a Roosevelt County Deputy Sheriff filed a criminal complaint in county magistrate court charging Tisthammer with twenty offenses related to the six burglaries. A magistrate judge issued an arrest warrant for Tisthammer based on an affidavit submitted by the deputy sheriff. Tisthammer was arrested on June 24, 1996.

On June 25, 1996, Tisthammer appeared before a magistrate judge. The magistrate informed Tisthammer of the charges against him and that he was "entitled to talk to a lawyer now, and have one present now, or at any time during these proceedings." When Tisthammer indicated that he was unable to afford a lawyer, the magistrate appointed the public defender to represent him. Nevertheless, because of a conflict of interest in the public defender's office, no attorney was immediately assigned to represent Tisthammer. The magistrate judge detained Tisthammer on a $100,000 bond.

On Friday, July 12, 1996, Tisthammer, while still incarcerated in county jail, received a letter from assistant district attorney Kent Peterson informing him that he was a target of a grand jury investigation. The letter indicated that the grand jury would convene on Monday, July 15th and that Tisthammer had the right to testify before the grand jury and to be represented by an attorney during that testimony. Because Tisthammer wanted to testify before the grand jury, he contacted Thomas Harden, a private attorney on contract with the public defender who was representing Tisthammer in other unrelated cases, and asked for assistance with his grand jury appearance. Harden told Tisthammer that he could not help him because he had not received notification from the public defender's office that he was appointed to represent Tisthammer in this case. Tisthammer then tried to reach an attorney in the public defender's office without success.

Tisthammer appeared at the grand jury on Monday, July 15th, without an attorney. The state presented the testimony of the six burglary victims, two law enforcement officers, and Chavez. Chavez testified that he and Tisthammer committed all six charged burglaries and that it was Tisthammer who had decided which places to burglarize. When it came to Tisthammer's turn to testify, he explained to the prosecutor, Peterson, his counsel situation; Peterson suggested that Tisthammer call Harden again. During that phone conversation, Harden again insisted that he could not advise Tisthammer because he still had not been

-4-

appointed to represent him. Nevertheless, Tisthammer did consult with Harden about the questions the prosecutor would likely ask and Harden advised Tisthammer to say what he wanted to say and then stop. Harden also talked with Peterson about what questions Peterson would ask and what questions Tisthammer wanted to be asked. Tisthammer then took the stand to testify.

When Tisthammer took the stand, Peterson informed Tisthammer that he had the right to refuse to answer any questions, if he decided to answer questions he could stop answering at any time, any answer he gave could be used against him at trial, and he had a right to consult with an attorney before testifying. In response, Tisthammer stated that he did not have an attorney present. He further noted that although his attorney could not be present because of prior engagements, he had talked to his attorney about testifying before the grand jury. Peterson then began questioning Tisthammer. At all times when he was present in the grand jury room, including the duration of his testimony, Tisthammer was handcuffed and shackled.

Tisthammer testified that Alice Zambrano was his wife and Chavez was his brother-in-law. He further testified that he did not commit any of the charged burglaries. Peterson then asked Tisthammer if he wished to make a statement regarding Chavez's motives for accusing him. In that regard, Tisthammer testified as follows: Chavez had accused Tisthammer to curry favor with the

authorities after Chavez was caught burglarizing homes in Texas; Chavez had previously been convicted and imprisoned on burglary charges; and Chavez did not like him because of his negative reaction to Chavez's treatment of Tisthammer's sister-in-law and was making up the story to get him in trouble. Peterson then asked Tisthammer where he was at the time of various burglaries. Tisthammer testified that he was probably either at work or at home, but that he would have to check with his employer or wife to be sure. When Peterson asked whether Tisthammer's wife was in custody for allegedly participating in one of the burglaries, Tisthammer responded that his attorney told him to say what he wanted to say and then quit, and he wanted to quit. The grand jury indicted Tisthammer on all charges.

## B. Procedural Background

Harden received notice of his appointment to represent Tisthammer the day after the grand jury hearing. Harden thereafter filed a motion to dismiss the indictment due to the deprivation of Tisthammer's New Mexico statutory right to assistance of counsel during grand jury proceedings. After holding an evidentiary hearing at which Tisthammer, Peterson, and Harden testified, the state trial court denied the motion to dismiss. The court reasoned that under New Mexico's statutory scheme, counsel would not have had a right to participate in the proceedings had he been present and that Tisthammer was advised he could stop

-6-

the proceedings if he wanted to consult with counsel, which is the same right he would have had if counsel were present.

Tisthammer did not testify at trial and did not present an alibi defense. The state did not use his grand jury testimony against him, and he did not assert on appeal that his decision not to testify was motivated by fear of being impeached by his grand jury testimony. The only defense presented at trial was an attack on the credibility of Chavez. At the close of evidence, the trial court dismissed one of the counts of criminal damage; the jury convicted Tisthammer on the remaining nineteen counts of the indictment.

On direct appeal, Tisthammer argued that the indictment should have been dismissed because he was denied his statutory right to counsel. *See State v. Tisthammer*, 966 P.2d 760, 762-63 (N.M. Ct. App. 1998). Although the New Mexico Court of Appeals concluded that Tisthammer was entitled to counsel during his grand jury proceedings pursuant to the Public Defender Act, N.M. Stat. Ann. §§ 31-15-1 to -12 (1973, as amended through 1993), it also concluded that the denial of counsel was harmless in this particular case. *Tisthammer*, 966 P.2d at 764-65. In reaching this conclusion, the court stated as follows:

> Even if Defendant had appeared with counsel before the grand jury, the role an attorney can play in that proceeding is so limited that Defendant has not shown the requisite degree of prejudice. In short, we are at a loss as to how the presence of counsel could have changed the grand jury's vote.

An attorney appearing with a target witness before the grand jury can only advise the witness. *See* [N.M. Stat. Ann.] § 31-6-4(C). The attorney cannot object to questions, cannot speak to the prosecutor or to the grand jury members, and when advising the target witness, must take care that the attorney is not overheard. *See id.* Moreover, a grand jury hearing does not determine guilt or innocence, but rather only makes a probable cause determination. It would require sheer speculation for us to hold that, had counsel been present with Defendant during his testimony, the grand jury would not have returned an indictment.

Defendant argues that he was prejudiced because his attorney could have presented an alibi or submitted questions for the prosecutor to ask if his attorney had been present with him in the grand jury room. However, even at trial, Defendant never presented an alibi. Moreover, Defendant was able to consult with Harden prior to testifying. Harden also spoke to the prosecutor and asked what questions would be asked and requested some questions for the prosecutor to ask. In accordance with Harden's request, the prosecutor asked Defendant to explain Chavez's motive for implicating Defendant in the burglaries. Also, Defendant was advised by his attorney to say what he wanted to say and not to answer additional questions. Defendant followed this advice during his examination and refused to answer additional questions. Thus, as the trial court noted, the presence of counsel at the grand jury hearing would have accomplished little more than what was done here.

Additionally, Defendant has not made any assertion that the State used his "uncounseled" grand jury testimony against him at trial. In fact, Defendant did not testify at trial. Nor has Defendant suggested that his decision not to testify at trial was motivated by fear that he could be impeached by his prior grand jury testimony. Finally, given that dismissal of a grand jury indictment is a rare occurrence, we hold that the circumstances in this case do not require such a serious measure. We expressly do not exclude the possibility that under different facts, an indictment might have to be dismissed. However, given the minimal nature of the standard of proof required for indictment, and given the attorney's limited ability to help a defendant by his presence in the grand jury room, we cannot say that a denial of counsel at the grand jury rises to the level of structural defect . . . . Given the obvious lack of any impact upon Defendant in

this particular case from appearing without counsel, dismissal was not required under the facts of this case.

*Id.* (citations omitted). The New Mexico Supreme Court denied Tisthammer's request for a writ of certiorari. *State v. Tisthammer*, 967 P.2d 447 (N.M. 1998).

Tisthammer raised, *inter alia*, the following two claims in his state habeas corpus petition, neither of which had been raised before: (1) he was denied his Sixth and Fourteenth Amendment right to counsel when he was not provided with the assistance of counsel during his grand jury proceedings; and (2) he was denied his Fourteenth Amendment right to due process when he was forced to appear before the grand jury handcuffed and shackled. The state habeas court did not address either of these claims on the merits. As to the right-to-counsel claim, the court erroneously concluded that this claim had already been considered by the New Mexico Court of Appeals and denied the claim on the ground that Tisthammer was not entitled to a "successive determination of issues previously determined." The state habeas court made no mention of Tisthammer's shackling claim. Tisthammer filed a petition for a writ of certiorari in the New Mexico Supreme Court, seeking review of the state district court's denial of habeas relief. Notably, however, there is no reference to the shackling claim in Tisthammer's petition for a writ of certiorari. The New Mexico Supreme Court denied the petition for a writ of certiorari without comment.

Tisthammer filed the instant 28 U.S.C. § 2254 habeas corpus petition on August 12, 1999, raising both the assistance-of-counsel and shackling claims. The matter was referred to a magistrate judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge expressed doubt as to whether the Constitution mandated counsel at a grand jury proceeding, even though Tisthammer had already appeared in court and been informed of the charges against him, but denied relief on the right-to-counsel claim on the ground that the denial of counsel was harmless. Although the decision of the New Mexico Court of Appeals on direct appeal related solely to Tisthammer's claim regarding his statutory right to counsel, the magistrate judge concluded that the analysis of harmless error was equally compelling as to his constitutional claim. The magistrate further concluded that Tisthammer suffered no prejudice from his shackling. Upon *de novo* review, the district court adopted the magistrate judge's report and recommendation in full and dismissed Tisthammer's § 2254 habeas petition with prejudice.

## III. ANALYSIS

### A. Standard of Review

Because Tisthammer filed his § 2254 habeas corpus petition in 1999, it is governed by the provisions of the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"). *Wallace v. Ward*, 191 F.3d 1235, 1240 (10th Cir. 1999).

Nevertheless, because neither of the claims advanced in Tisthammer's § 2254

habeas petition was decided on the merits by New Mexico state courts, "we may

exercise our independent judgment in deciding the claim[s]." *Battenfield v.*

*Gibson*, 236 F.3d 1215, 1220 (10th Cir. 2001). "In doing so, we review the

federal district court's conclusions of law de novo and its findings of fact, if any,

for clear error." *Id.* State court findings of fact are presumed correct. 28 U.S.C.

§ 2254(e)(1).

## B. Right to Counsel at Grand Jury Hearing

The respondents concede on appeal that Tisthammer had a federal

constitutional right to counsel when he appeared before the grand jury. [1]

---

[1]The respondents recognize that a witness does not ordinarily have a
constitutional right to counsel for an appearance before a grand jury because the
witness has not, at that point, been formally charged and that the Supreme Court
has never held that a grand jury witness even has the right to have an attorney
present outside of the grand jury room. *See United States v. Mandujano*, 425 U.S.
564, 581 (1976); *Conn v. Gabbert*, 526 U.S. 286, 292 (1999). The respondents
nevertheless concede that

> in this case the normal procedure was not followed. . . . Officer
> Gates filed a criminal complaint against [Tisthammer], and
> [Tisthammer] had his first appearance before the [state] Magistrate
> Judge before he was brought before the grand jury. At his first
> appearance . . . [Tisthammer] was informed of the charges pending
> against him and his right to have an attorney. [Tisthammer] therefore
> had . . . a constitutional right to counsel under *Kirby v. Illinois*, [406
> U.S. 682, 688-89 (1972) (plurality opinion] when he appeared at the
> grand jury.

(continued...)

Accordingly, the narrow question before this court is whether the denial of counsel in this particular case was harmless. We conclude that it was.

Tisthammer asserts that prejudice is presumed and a harmlessness analysis is, therefore, unnecessary because there was a complete denial of counsel during the grand jury proceedings. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."); *see also Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) (concluding that structural errors, including the complete deprivation of counsel "defy analysis by harmless-error standards" (quotation omitted)). We conclude a deprivation of counsel at the grand jury proceeding like that at issue here is not subject to the *Cronic* presumption, but is instead governed by the Supreme Court's decision in *Coleman v. Alabama*, 399 U.S. 1 (1970). In *Coleman*, the Court held a preliminary hearing was a critical stage in the prosecution[2] and that the denial of

---

[1](...continued)
This court is not bound by the respondents' legal concession that Tisthammer had a constitutional right to counsel at the time he appeared before the grand jury. *Koch v. United States Dep't of Interior*, 47 F.3d 1015, 1018 (10th Cir. 1995). Nevertheless, because the respondents' concession has deprived this court of the benefit of adversary briefing on this important question and because we ultimately agree with the district court that any alleged constitutional violation is harmless, we find it unnecessary to decide the question in this case.

[2]In support of its conclusion that the preliminary hearing under Alabama law was a critical stage of the criminal proceeding at which a defendant was entitled to the
(continued...)

counsel at the hearing violated the Sixth Amendment. *Id.* at 10 (plurality opinion). The Court nevertheless concluded that the deprivation was subject to harmless error analysis and remanded the case to state court for such an analysis. *Id.* at 11.

We agree with respondents that this case is far more analogous to *Coleman* than it is to *Cronic*. There is nothing in the record to indicate that the grand jury proceeding in New Mexico is somehow more critical than Alabama's pre-trial preliminary hearing. In fact, as discussed at some length in the opinion of the New Mexico Court of Appeals on direct appeal, the role of defense counsel is exceedingly limited. *See Tisthammer*, 966 P.2d at 765. Accordingly, assuming

---

[2](...continued)
assistance of counsel, the Supreme Court noted as follows:

> Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

*Coleman v. Alabama*, 399 U.S. 1, 9 (1970) (plurality opinion).

-13-

without deciding that a grand jury proceeding following the filing of a criminal complaint and first appearance constitutes a critical stage, the denial of counsel at the grand jury hearing is subject to review for harmless error. [3]

Having concluded that the denial of counsel at the grand jury proceeding is subject to harmless error analysis, this case is easily resolved. Pursuant to *Brecht* we analyze whether the constitutional error had a "substantial and injurious effect" on the proceedings. 507 U.S. at 638 (quotation omitted). After conducting a *de novo* review of the entire record, this court concludes that the respondents have demonstrated that the errors were harmless for substantially those reasons set out by the New Mexico Court of Appeals in concluding that the denial of Tisthammer's New Mexico statutory right to counsel was harmless. *See Tisthammer*, 966 P.2d at 764-65. In so doing, this court is fully cognizant that the standards utilized to analyze the two claims are different. *Compare id.* at 764 (noting that Tisthammer had not met his burden of demonstrating prejudice), *with*

_____

[3]This court joins the Sixth and Eleventh Circuits and specifically rejects Tisthammer's assertion that *Cronic* has impliedly overruled *Coleman*. *See Hammonds v. Newsome*, 816 F.2d 611, 613 (11th Cir. 1987); *Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985); *cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). In fact, this court recently recognized in dicta the continuing validity of *Coleman*. *See United States v. Pearson*, 203 F.3d 1243, 1261 (10th Cir. 2000).

*Brecht*, 507 U.S. at 640 (Stevens, J., concurring) (noting that burden is on respondents to demonstrate that the constitutional error did not have a substantial and injurious effect on the jury's deliberations). We nevertheless conclude that the factors identified by the state court demonstrate that Tisthammer suffered no prejudice as a result of the absence of counsel.

**C. Shackling Claim**

Tisthammer asserts that he was denied his right to due process when he was compelled to wear shackles and handcuffs while testifying before the grand jury. We begin by noting that because Tisthammer has not properly exhausted this claim in state court and because New Mexico has not expressly waived the exhaustion requirement we cannot grant him relief. *See* 28 U.S.C. § 2254(b)(1)(A) (providing that a habeas corpus petition on behalf of a state prisoner "shall not be granted" unless the petitioner has exhausted his state court remedies); *see also id.* § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). Tisthammer raised this claim for the first time in his state habeas petition. The state district court did not address the claim. In his petition for writ of certiorari to the New Mexico Supreme Court seeking review of the denial of his state habeas petition, Tisthammer did not raise the shackling claim. Accordingly,

Tisthammer has not properly exhausted the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding that "a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not properly exhausted the claim). [4]

Despite Tisthammer's failure to properly exhaust this claim in state court, this court may deny relief on the merits. *See* 28 U.S.C. § 2254(b)(2). We begin by noting that Tisthammer does not cite a single case granting post-conviction relief based on a claim the petitioner was shackled during grand jury proceedings. [5] The opinion of the Supreme Court in *United States v. Mechanik*,

_____

[4]It is likely that the shackling issue is procedurally barred. *See Duncan v. Kerby*, 851 P.2d 466, 468 (N.M. 1993) (holding that New Mexico post-conviction procedures are not a substitute for direct appeal and that, absent extraordinary circumstances, issues that could have been raised on direct appeal will not be considered in post-conviction review); *Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998) ("Our review of New Mexico cases indicates that New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief."); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (holding that if the court to which a petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review). Because it would be necessary to request supplemental briefing were this court to raise the procedural bar issue *sua sponte*, *see Hardiman v. Reynolds*, 971 F.2d 500, 505 (10th Cir. 1992), and because we easily conclude *infra* that Tisthammer's shackling during his grand jury appearance did not have a substantial and injurious effect on his criminal proceedings, this court chooses to dispose of this issue on the merits.

[5]Tisthammer, instead, relies on a single case from a New York state trial court granting a pre-trial motion to dismiss an indictment because of shackling during grand jury proceedings, *People v. Marquez*, 593 N.Y.S.2d 745, 747 (N.Y. Sup. Ct.

(continued...)

475 U.S. 66, 72-73 (1986), discussing at length the substantial societal costs attendant to vacating an otherwise valid conviction based solely on violations of the Federal Rules of Criminal Procedure at the grand jury stage, most likely demonstrates why there are no such cases. As was true in *Mechanik*, the jury's finding that Tisthammer was guilty beyond a reasonable doubt alleviates the concern that the grand jury's finding of probable cause to charge was tainted by the shackling.

In an attempt to overcome *Mechanik*, Tisthammer notes that it only involved a violation of the Federal Rules of Criminal Procedure, rather than a constitutional violation as alleged here. Tisthammer further notes that this court has held that when "the claimed errors [go] beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment and essentially threatened the defendant's rights to fundamental fairness, the issue is justiciable notwithstanding a subsequent guilty verdict by a petit jury." *United States v. Lopez-Gutierrez*, 83 F.3 1235, 1245 (10th Cir. 1996) (quotation omitted); *see also United States v. Wiseman*, 172 F.3d 1196, 1206 (10th Cir. 1999). Assuming without deciding that these direct appeal cases apply in the post-

---

[5](...continued)
1993), and two federal cases granting habeas relief where the petitioner was shackled during trial, *Rhoden v. Rowland*, 172 F.3d 633, 637-38 (9th Cir. 1999); *Elledge v. Dugger*, 823 F.2d 1439, 1450-52, *modified on other grounds*, 833 F.2d 250 (11th Cir. 1987).

conviction context, this court concludes that, under the particular facts of this case, Tisthammer's shackling during his brief appearance before the grand jury did not "transgress[] [his] right to fundamental fairness." *Lopez-Gutierrez*, 83 F.3d at 1245. In this regard, Tisthammer simply argues that "[t]he restraints were particularly prejudicial in this case where [his] success depended on the grand jury's view of his credibility." The balancing of his credibility with that of Chavez, however, relates to the question of whether there was sufficient evidence to indict, the exact situation addressed in *Mechanik*, albeit in the context of a rules violation. The petit jury's determination at trial, pursuant to the standard of proof beyond a reasonable doubt, that Chavez was credible and Tisthammer was not, leads us to conclude that the shackling did not have a "substantial and injurious effect" on the grand jury proceedings. *Brecht*, 507 U.S. at 638 (quotation omitted).

## IV. CONCLUSION

For those reasons set out above, the order of the United States District Court for the District of New Mexico denying Tisthammer's § 2254 habeas corpus petition is hereby **AFFIRMED** .

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge